## DISTRICT OF MASSACHUSETTS

—————————————————————————

UNITED STATES OF AMERICA )
)
) **CRIMINAL ACTION**
v. ) **NO.  16-30033-TSH**
) **17-40050-TSH**
)
FRANCESCO DEPERGOLA, )
                          **Defendant.** )
—————————————————————————— )

## ORDER ON DEFENDANT'S MOTION TO MODIFY SENTENCE AND FOR COMPASSIONATE RELEASE (Docket Nos. 461 & 462)

### November 4, 2020

Francesco Depergola pled guilty to Conspiracy to Interfere with Commerce by Threats or Violence, in violation of 18 U.S.C. § 1951; Interference with Commerce by Threats of Violence and Aiding and Abetting, in violation of 18 U.S.C. § 1951; and Extensions of Financial Credit by Extortion, in violation of 18 U.S.C. § 893.  I sentenced him to 38 months imprisonment followed by 2 years of supervised release.  He is scheduled for release on March 6, 2021.  Citing the danger that the COVID-19 pandemic poses, Mr. Depergola moved for an Order for Compassionate Release on October 5, 2020 and October 20, 2020.  (Docket Nos. 461 and 462).  For the reasons set forth below, the motion is ***granted***.

### Discussion

Section 3582(c) begins with the general principle that a "court may not modify a term of imprisonment once it has been imposed . . . ."  Upon motion of the Director of the Bureau of Prisons or a defendant, however, a court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in

section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction."  § 3582(c)(1)(A).

Mr. Depergola argues that his medical conditions and the COVID-19 situation at FCI Ft. Dix and the Residential Reentry Center, where he is scheduled to "step-down" in the coming weeks, constitute extraordinary and compelling reasons justifying converting the remainder of his sentence to home confinement.  After considering the current and potential prospective impact of the pandemic together with an individualized assessment of relevant factors as they pertain to Mr. Depergola—(1) his age and health, including whether he has any health conditions that place him at increased risk of serious illness or death from COVID-19; (2) the health, safety, and living conditions at the facility where he is housed, any specific crowding issues, and the specific steps taken by the facility in response to the spread of COVID-19; and (3) the crime of conviction and length of the his remaining sentence—I agree.

Mr. Depergola is 64 years old and suffers from high blood pressure and sleep apnea.  His motion does not describe the severity of his symptoms, or allege a lack of appropriate medical care concerning either medical condition that he identified that might increase his susceptibility to infection or likelihood of a severe course of the illness if he should become infected.  But according to the Centers for Disease Control and Prevention, individuals with high blood pressure may be at increased risk for severe illness from COVID-19.[1]  Mr. Depergola's age places him in a higher risk group that is four times more likely to be hospitalized after

---

[1] CENTERS FOR DISEASE CONTROL & PREVENTION, COVID-19: PEOPLE WITH CERTAIN MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Nov. 2, 2020).

contracting COVID-19 than individuals who are 18-29 years old.[2]  Thus, there is significant evidence that he is at a heightened risk of serious illness or death if he contracts the virus.

By themselves, these risks are common among older inmates in the prison population and are not so unique to Mr. Depergola as to constitute "extraordinary and compelling reasons" warranting his early release.  However, they are more compelling in the context of the recent alarming COVID-19 outbreak at FCI Ft. Dix.  According to the Bureau of Prisons, as of November 4, 2020 FCI Ft. Dix has the highest number of cases in the federal prison system— 209 inmates and 10 staff members have tested positive. There is no cure and limited effective treatment for COVD-19.  The virus can spread quickly in densely populated indoor facilities such as prisons and detention centers; indeed, the number of cases at FCI Ft. Dix appears to have tripled over the course of one week. These new conditions put Mr. Depergola at increased risk compared to May 2020, when I considered and denied his first motion for compassionate release. At that time, Mr. Depergola alleged that FCI Ft. Dix had reported 31 cases in the inmate population (Docket No. 19 ¶ 9).

The Government did not file an opposition to this motion but informed the petitioner's counsel that it would not object to a ruling consistent with my decision to grant early release to Mr. Depergola's co-defendant, Giovanni Calabrese.  They affirmed this position at the hearing.  I granted Mr. Calabrese's motion for reconsideration of compassionate release on June 18, 2020. (Docket No. 459).  At the time of his release, Mr. Calabrese had no prior criminal history, no disciplinary infractions, and had served 31 months of his 36-month sentence.  He was scheduled to be released to a halfway house in a manner of weeks.  Although circumstances where he was

---

[2] CENTERS FOR DISEASE CONTROL & PREVENTION, COVID-19 HOSPITALIZATION AND DEATH BY AGE, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Nov. 2, 2020).

being held had markedly improved by the time of the hearing, when Mr. Calabrese filed his motion FMC Lexington had also reported the highest number of positive COVID-19 cases in the federal prison system.[3]

Unlike Mr. Calabrese, Mr. Depergola's criminal history and recidivism weigh against granting his early release.  He received a below guidelines sentence of 36 months incarceration after pleading guilty for conspiracy to and interference with commerce by threats and violence and extensions of financial credit by extortion in two criminal schemes spanning two different jurisdictions. Fourteen years ago, he plead guilty to collecting extensions of credit by extortion and conspiracy to do so and received a 24-month sentence in October 2006—the same offenses that led to his current incarceration. See *United States v. Depergola*, 05-cr-30002-MAP, dkt. 77 (D. Mass.).  Nonetheless, he has served the bulk of his criminal sentence, and would be transitioning to a less restrictive facility in a manner of weeks regardless of my decision regarding his request for early release.

In sum, based on the totality of the circumstances Mr. Depergola has shown extraordinary and compelling reasons warranting his early release under § 3851(c)(1)(A).  When I denied Mr. Pergola's first motion for compassionate release, I noted that Mr. Depergola would be at heighted risk for a severe course of illness if he contracted COVID-19 and gave him leave to file another motion should his circumstances or the COVID-19 situation at FCI Ft. Dix change. Now there is a rampant outbreak at the facility where he is incarcerated—209 inmates and 10 staff have tested positive.  Accordingly, I ***grant*** the motion for compassionate release. Mr. Depergola's supervised release shall begin immediately upon his release from FCI Ft. Dix

---

[3] The Bureau of Prison's COVID-19 website does not track the number of positive cases reported at privately operated contract facilities such as the Donald D. Wyatt Detention Facility in Rhode Island.  There may be unlisted facilities where individuals are serving their sentences or being held for pre-trial detention which have more COVID-19 cases than Ft. Dix or higher rates of infection.

and will be extended by 4 months. To prevent the spread of COVID-19, Mr. DePergola shall

self-quarantine for a period of 14 days at his home in West Springfield following his release.  All

other conditions of his supervised release remain unchanged, especially the prohibition barring

him from any contact with members, affiliates, or associates of the Genovese Crime Family of

La Casa Nostra and the victims in this case, or their families.

<u>**Conclusion**</u>

For the reasons explained above, I <u>***grant***</u> Mr. Depergola's motion for compassionate

release and extend his period of supervised release by 4 months.  To prevent the spread of

COVID-19, Mr. DePergola shall self-quarantine for a period of 14 days following his release.

His 28-month period of supervised release shall begin immediately after his release from FCI Ft.

Dix; all other conditions of his supervised release remain the same.


**SO ORDERED.**

<u>***/s/ Timothy S. Hillman***</u>
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**